# Commonwealth *versus* Jackson *et al.*

1. After a plea of not guilty to an indictment, and a trial on the merits, it is too late for the defendant to object, that his addition of degree, mystery and residence, are omitted or mis-stated; or that the time is stated in figures instead of words at length; or that the indictment states the presentment to be on the oath and affirmations of the grand jurors, the word "respectively" being omitted.

2. If an indictment is found by the grand jurors, inquiring for the body of the proper county, it will be presumed, after trial, that they were performing their duties within the county when the bill was found.

3. A conclusion, "to the great damage of the said L. C. P., (the prosecutor,)

[Commonwealth *v.* Jackson et al.]

against the peace of the State, the government and dignity of the same," is defective.

4. A description of the premises, in an indictment for forcible entry and detainer, as follows: "A certain dwelling-house and woollen factory, or wool-carding and cloth-dressing mill or machine, and also a saw-mill; said dwelling-house situated on," &c., giving the boundaries at length; "also, said woollen factory, or wool-carding and cloth-dressing mill or machine, being situated," &c., giving the boundaries; "also, said saw-mill being situated," &c., setting out the boundaries, "all of which is situated upon lands of J. I. J., in D. township, Tioga county, Pennsylvania," is sufficient. And it is a sufficient allegation of the expulsion of the prosecutor from all said premises, to state that he was expelled, &c., from said messuage, tenement, premises and appurtenances as aforesaid.

ERROR to the Court of Quarter Sessions of *Tioga county.*

Indictment for forcible entry and detainer. The defendants having been found guilty, a motion was made in arrest of judgment, on the ground that the indictment was defective; because,

1. There was no venue laid.

2. It did not appear that the grand jury were in the county, or inquiring in the county, when the presentment was made.

3. The presentment did not appear to be made upon the oath or affirmation of each and all of the jurors.

4. The defendants were not stated to be, or to have been, late of any county.

5. No residence was given them.

6. The township and county in which the buildings and premises charged to have been forcibly entered and detained, are situated, were not set forth, except as to the saw-mill, and there was no proof of a forcible entry in, or detainer from, that.

7. It was not charged, that the prosecutor was expelled and put out from any portion of the premises described therein, except the saw-mill.

8. The indictment is too vague and uncertain in the description of the premises.

9. The dwelling-house and woollen factory being described as one building.

10. The statement of time and quantity throughout the indictment was generally in figures and abbreviations.

11. The conclusion was not what is required by the Constitution.

The indictment contained two counts, and, so far as material to the understanding of the case, was as follows:

"In the Court of Quarter Sessions, for the county of Tioga, at May Sessions, A. D. 1854, (one thousand eight hundred and fifty-four.)

"The grand inquest of the Commonwealth of Pennsylvania, inquiring for the body of the county of Tioga, upon their oaths and affirmations, respectfully do present, that J. I. J., W. H., D. H., C. H., and S. J., together with divers other evil-disposed

[Commonwealth *v.* Jackson et al.]

persons, in all to the number of seven or more, whose names are to the jurors aforesaid as yet unknown, did, on the night of the 24th day of March last, A. D. 1854, with force and arms," &c., unlawfully, &c., enter into the premises,—describing them in the same words as in the second count, and then and there in the peaceable possession of L. C. P., and unlawfully, &c., did expel, &c., the said L. C. P., "from the possession of the said premises with the appurtenances," and kept, and still do keep, him so expelled, &c., and other wrongs, &c., "to the great damage of the said L. C. P., against the peace of the State, the government, and dignity of the same."

"The grand inquest of the Commonwealth of Pennsylvania, inquiring for the body of the county of Tioga, upon their oaths and affirmations, respectfully do further present, that the said L. C. P., on the 24th day of March last, A. D. 1854, at Delmar, Tioga county, and State of Pennsylvania, was possessed by a leasehold estate therein, of the said messuages, tenements, premises and appurtenances, as hereinbefore in the first count hereof and hereinafter described, to wit: A certain dwelling-house and woollen factory, or wool-carding and cloth-dressing mill, or machine, and also a saw-mill; said dwelling-house situated on the south side of the road leading from Wellsboro to Dart Settlement, which house, with the curtillage appurtenant, is bounded north by the above-mentioned public highway, east by the woollen factory and lot upon which the woollen factory stands, belonging to James I. Jackson, on the south by the stream or creek running past, and used as a water privilege, to carry the above-mentioned woollen factory, and west by lands of Mrs. Luia Lock; containing about one-sixteenth of an acre, more or less, and situated near the woollen factory of said James I. Jackson, and used as a dwelling-house. Also, said woollen factory, or wool-carding and cloth-dressing mill or machine, being situated on the south side of the above-mentioned road leading from Wellsboro to Dart Settlement; and on the west side of a cross-road leading from the above-mentioned road, leading from Wellsboro to Dart Settlement, to the State road leading from Wellsboro to Covington, and which said woollen factory, or wool-carding and cloth-dressing mill, or machine and curtilage appurtenant, is bounded north by said road leading from Wellsboro to Dart Settlement, on the east by said cross-road leading from Wellsboro and Dart Settlement road to said State road leading from Wellsboro to Covington, on the south by said creek used as a water privilege for said woollen factory, or wool-carding and cloth-dressing mill or machine, and on the west by the dwelling-house above described, including land only that the said factory stands upon, with the curtilage appurtenant; being one-sixteenth of an acre, more or less. Also, said saw-mill being

situated on the south side of the road leading from Wellsboro to Dart Settlement, bounded north by said last above-mentioned road, east and south by lands of said James I. Jackson, and west by the cross-road leading from said Wellsboro and Dart Settlement road to said State road leading from Wellsboro to Covington; containing said saw-mill, and privilege and curtilage appurtenant, two acres more or less; all of which is situated upon lands of James I. Jackson, in Delmar township, Tioga county, and State of Pennsylvania, being parts of a larger tract of land adjoining lands of James I. Jackson, for a certain term of years, whereof divers of those years, to wit, one year, that is to say, eleven months and seven days, were then to come, and are still unexpired; and that the said Lewis C. Pendleton being so possessed by a leasehold estate thereof, the said J. I. J., W. H., D. H., C. H., and S. J., afterwards, to wit, on the day and year aforesaid, to wit: on the night of the 24th day of March last, A. D. 1854, at the county and within the jurisdiction aforesaid, into the said messuage, tenement, premises and appurtenances as aforesaid, with force and arms, and with a strong hand, unlawfully did enter, and the said L. C. P. from the peaceable possession of the said messuage, tenement, premises and appurtenances, as aforesaid, then and there, with force and arms, and with a strong hand, unlawfully did expel and put out, the said L. C. P. from the possession thereof so as aforesaid, with force and arms, and with a strong hand, being unlawfully expelled and put out from the day and year aforesaid, until the taking of this inquisition, from the possession of the said messuage, tenement, premises and appurtenances, with force and arms, and with a strong arm, unlawfully and injuriously, then and there did keep out, and still do keep out, to the great damage of the said L. C. P., contrary to the statute in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

The court below arrested the judgment; whereupon, the Commonwealth took this writ of error.

*Sherwood* and *Ryan,* for plaintiff in error.

*Williams* and *Williston,* for defendants in error.

The opinion of the court was delivered by
LEWIS, C. J.—After a plea of not guilty, and a trial on the merits, it is too late for the defendants to object, that their additions of degree, mystery, and residence, are omitted or misstated. 1 Ch. C. L. 202. The same may be said of an objection, that the year in which the offence was committed is stated in figures instead of words. *Jacoby* v. *Commonwealth,* 5 S. & R.

315.   It is sufficient after plea pleaded, and trial had, that the indictment sets forth, that it was found "on the oaths and affirmations" of the grand jurors inquiring "for the body of the county" in which the trial was had.   The word "respectfully" being substituted for *respectively*, may be rejected as surplusage. If the indictment is found by the grand jurors inquiring for the body of the proper county, it will be presumed, after trial, that they were performing their duties within the county when the bill was found.   The first count is defective, in concluding contrary to the form prescribed by the Constitution.   But the second count is free from every substantial exception.   As the term has expired, no writ of restitution is required or claimed by the Commonwealth.

> The judgment on the first count is affirmed, and the judgment on the second count is reversed, and a *procedendo* awarded.