# Commonwealth, Appellant, *v.* Ross.

*Criminal law—Indictment—Quashing indictment—Occurrences before the grand jury—Evidence—Appeals—Discretion of the quarter sessions.*

1. An indictment may be quashed for a cause not apparent on the face of the record.

2. In determining whether an indictment should be quashed, the

court of quarter sessions may consider the testimony of grand jurors as to matters which occurred before them, and as to the evidence which was submitted to them bearing on the case.

3. Where matters alleged against an indictment exist outside of the record, the question whether the objections are sustained by the preponderance of testimony is not taken up on appeal by the commonwealth's exception to the order quashing the indictment, except in cases of nuisance and forcible entry and detainer; but even if the evidence were reviewable the decision of the court ought not to be overruled except for clear error or plain abuse of discretion.

Argued May. 4, 1914.   Appeal, No. 143, April T., 1914, by plaintiff, from order of Q. S. Greene Co., Dec. Term, 1913, No. 3, quashing indictment in case of Commonwealth v. Timothy J. Ross, Lisbon Scott and George White.   Before Rice, P. J., Orlady, Head, Porter, Henderson, Kephart and Trexler, JJ.   Affirmed.

Motion to quash indictment.

Inghram, P. J., filed an opinion, the material portion of which was as follows:

Many reasons have been assigned in support of the motions both to quash the indictments, and to quash the array of grand jurors at June and September Sessions, 1913, and the petit jurors at December Sessions, 1913, of the court of quarter sessions of the peace, and testimony has been taken and submitted to the court in support of, and against, both of said motions.   Sections 3 and 4 of the Act of Assembly of March 18, 1874, P. L. 46, provides as follows:

"3. That hereafter a list containing the name, occupation and residence of every person placed in the jury wheel, shall be kept, certified by the judge and jury commissioners, or such of them as shall be present at the selection of such persons, and filed of record in the office of the Prothonotary of the Court of Common Pleas of the respective County."

"4. That whenever, by existing laws, it shall be the

duty of any person connected with the selection or drawing of jurors to be sworn, the oath required to be taken shall be reduced to writing, subscribed by the person qualified, and filed in the office of the Prothonotary of the Court of Common Pleas, as a part of the records thereof."

If the jury commissioners were sworn before making the selection of persons to serve as jurors for the year 1913, there is no evidence that such oath was reduced to writing, subscribed by the persons making the oath, and filed in the office of the prothonotary as a part of the records thereof, as required by sec. 4 of the Act of March 18, 1874, P. L. 46.

If the jury commissioners were sworn at all, before filling the jury wheel for 1913, the oath was administered by the recorder of deeds, who does not say that such oath was administered, but he does testify that he had been unable to find any evidence of the filing of such oath in his office.

It is not claimed that any oath taken by the jury commissioners before filling the jury wheel for the year 1913, was filed in the office of the prothonotary; but it is claimed by the district attorney that if the jury commissioners were sworn by the recorder of deeds, this is a substantial compliance with the requirements of the act of 1874.

We cannot agree with the district attorney in this, since even granting that the recorder of deeds is an officer having general power to administer oaths, which is by no means clear, and if it was found from the evidence that the jury commissioners were sworn before him, there is no evidence from which we could find that such oath was reduced to writing and filed in his office or in the prothonotary's office.

Their testimony is clear that not only was there a failure to file their oaths in the office of the prothonotary, which the law requires, but it is not even claimed that a list containing the names, occupation and residences of

every person placed in the jury wheel, was properly certified and filed of record in said office.

The act of 1874 requires all oaths taken by officers who are intrusted with the drawing, selecting and returning of jurors to be reduced to writing and filed of record. There are important reasons why this require- ment of the law should be complied with. One reason is that the record should furnish the evidence of the qualification of the officer to participate in the drawing.

Another is that if such list has been made out, properly certified, and filed, persons interested can examine it, and if the name of a juror drawn for any term of court is not found on the certified list of jurors placed in the wheel for that year it is prima facie evidence of fraud. The act of 1874, by thus requiring the certifying and filing of such list, provides a safeguard against fraud of this nature.

The evidence taken in these cases shows that the jury commissioners did make out a list of the names of persons placed in the jury wheel for the year 1913, that said list was copied into a book kept by the jury commissioners for that purpose, was certified by the sheriff and jury commissioners, and that the book was left with the sheriff for safe-keeping. This was surely not a filing of the list in the prothonotary's office as required by law. Further the evidence does not show that anyone besides the sheriff and jury commissioners knew of the existence of such a list or where it could be found. We cannot agree with the district attorney that this is a substantial compliance with the requirements of the act of assembly.

"The Court will quash the array if it appears that no list of jurors has been filed in the prothonotary's office as required by the third Section of the Act of March 18, 1874, P. L. 46:" Com. v. Haines, 27 Pa. C. C. Rep. 81; Klemmer v. Railroad, 163 Pa. 521.

It is claimed by defendants and the testimony clearly shows that while the grand jury had the indictments

under investigation at September Sessions, - 1913, the district attorney had the stenographer read to the grand jury from his notes taken at the investigation at June Sessions, 1913, extracts from the testimony of persons sworn and examined at that time, but who were not sworn and examined by the grand jury at the later investigation when the notes of their testimony taken on the former hearing were read. This we think was introducing improper or incompetent testimony before the grand jury; as if it was necessary to have such evidence, the witnesses themselves should have been subpœnaed and called before the grand jury, and their testimony taken in the usual and regular way.

In addition to the above reason for quashing the indictment it is claimed by the defendants that the failure to properly certify and file the list of names of persons placed in the wheel for 1913 is also valid not only for quashing the array, but for quashing the indictment.

We are of opinion that for the reasons assigned by the defendants in their motions, both the array of grand jurors at June and September Sessions and the array of petit jurors at December Sessions, 1913, and the indictments at Nos. 3 and 4, December Sessions, 1913, should be quashed.

*Error assigned* was order quashing the indictment.

*David R. Huss*, for appellant.—It was error to quash the indictment: Com. v. Freeman, 166 Pa. 332; Com. v. Craig, 19 Pa. Superior Ct. 81; Com. v. Carlucci, 48 Pa. Superior Ct. 72; Com. v. Penrose, 27 Pa. Superior Ct. 101; Com. v. Windish, 176 Pa. 167; Com. v. Eagan, 190 Pa. 10; Com. v. Immell, 6 Binney, 403.

The record is free from any suspicion of fraud, tampering, concealment or injury, and that any improper or disqualified juror sat on these arrays to which objections could have been made: Com. v. Hofstot, 58 Pitts.

L. J. 379; Com. v. Zeigler, 22 W. N. C. 111; Com. v. Gaines, 42 Pa. Superior Ct. 550.

*F. W. Downey*, with him *J. W. Ray, J. H. Zimmerman* and *Charles H. King*, for appellees.

OPINION BY HENDERSON, J., October 12, 1914:

The defendants filed a motion to quash the indictment against them and also a motion to quash the array of the grand jury which returned the indictment. Many reasons were filed in support of the motions and a considerable volume of evidence bearing on the questions presented was introduced. The action of the court in quashing the indictment was based in part on this evidence, and the conclusion reached by the learned judge of the court below can only be reversed when it is made to appear that there is no warrant in law or in fact for the judgment announced. If we may examine the evidence we are not convinced that the decision arrived at was unauthorized. The court might well have concluded that the action of the grand jury was influenced because of the introduction of evidence before it which was inadmissible and prejudicial to the rights of the defendants and without which the bill would not have been found. There is no doubt that an indictment may be quashed for a cause not apparent on the face of the record. The rule is well established in this state: Brown v. Com., 73 Pa. 321; Com. v. Bartilson, 85 Pa. 482; Com. v. Bradney, 126 Pa. 199; Com. v. Carlucci, 48 Pa. Superior Ct. 72. It is to be observed, however, that at common law no bills of exceptions were permitted in criminal cases nor did the evidence or rulings and opinion of the court form any part of the record: Schleppe v. Com., 65 Pa. 51; Haines v. Com., 99 Pa. 410. Even where the judge voluntarily sealed a bill, yet as it was not required by the statute the subject therein contained could not be considered: Com. v. Layton, 45 Pa. Superior Ct. 583. The act of 1874 only authorizes a bill of exceptions in

favor of the commonwealth in the cases of nuisance and forcible entry and detainer. In these cases the proceeding to quash is considered as part of the trial and an exception in favor of the commonwealth brings the evidence presented at the hearing on the motion to quash on the record: Com. v. Bradney, 126 Pa. 199. As to other cases the law remains as before the passage of the act of 1874. The subject is fully considered and the cases examined in the opinion of President Judge Rice in Com. v. Carlucci, supra. Where the matters alleged against the indictment exist outside of the record the question whether the objections are sustained by the preponderance of testimony is not brought up on the appeal by the commonwealth's exception to the order quashing the indictment except in the cases above referred to, and even if the evidence were reviewable the decision of the court ought not to be overruled except for clear error or plain abuse of discretion: Com. v. Green, 126 Pa. 531; Com. v. Bolger, 42 Pa. Superior Ct. 115.

A reference to Gordon v. Com., 92 Pa. 216; Com. v. Green, supra; Com. v. McComb, 157 Pa. 611; State v. Fassett, 16 Conn. 457; Com. v. Mead, 12 Gray, 167; Way v. Butterworth, 106 Mass. 75, will make it evident that the testimony of the grand jurors was competent for the purpose for which the witnesses were called and the court was not in error in taking that testimony into consideration. There being questions of fact which controlled the action of the court it is unnecessary to consider the numerous other propositions presented in the sixty-one exceptions in support of the rules to quash and the six assignments of error, or to enter into a discussion of the reasons for or against the order of the court quashing the array of grand jurors. The indictment having been quashed the proceeding necessarily falls so far as this indictment is concerned.

The order is affirmed and the appeal dismissed at the cost of the appellant.