# Commonwealth *v.* Fotti, Appellant, and Romalo.

*Criminal law—Arson—Trial—Contradictory testimony—Cross-examination—Evidence—Grand jury—Privileged communications—Testimony as to other offenses—Admissibility—Witnesses—Character—Attack—Act of March 15, 1911, P. L. 20.*

In the trial of an indictment for arson the testimony of one of the defendant's witnesses varied from that which he gave in the trial of other persons tried for complicity in the same crime. In such case the witness could be interrogated as to whether or not he had sworn differently before the grand jury, and his testimony before that tribunal was not a privileged communication.

On no sound principle can it be said that a witness who has testified before the grand jury shall be permitted to claim that his evidence was a privileged communication. The rule forbidding dis-

closure by members of the grand jury of their official proceedings does not apply to a witness before them who is being asked concerning his contradictory statements.

Where the theory of the Commonwealth was that the crime was committed in retaliation for a series of attacks made against the maintenance of a certain bawdy house by the person whose house was burned, cross-examination to show that the defendant was interested in this particular bawdy house was proper as bearing on the motive of the crime.

Questions in regard to defendant's connection years before with another house in another place and as to the commission of other crimes were inadmissible.

A witness may be interrogated as to his conviction of crime affecting his credibility, but cross-examination may not be used as a cover for a general and indiscriminate attack on the character of the witness by innuendo and insinuation.

Argued April 9, 1928. Appeal No. 60, October T., 1928, by defendant from judgment and sentence of Oyer and Terminer of Schuylkill County, No. 648, June T., 1926, in the case of Commonwealth of Pennsylvania v. Frank Fotti and Carl Romalo. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Indictment for arson. Before KOCH, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were various rulings on the evidence.

*Charles J. Margiotti,* and with him *William M. Gillespie, Sebastian C. Pugliese* and *A. D. Knittle,* for appellant.

*R. A. Freiler,* Deputy District Attorney, and with him *M. A. Kilker, John J. Moran, M. M. Burke, Jas. A. Noecker* and *C. A. Snyder,* District Attorney, for appellee.

OPINION BY KELLER, J., April 24, 1928:

Appellant has filed twenty assignments of error. Five of them, the fourth, fifth, sixth, seventh and tenth, we sustain.   The others are without merit and do not require extended consideration.

Appellant was indicted for arson; the burning of the rectory of the Holy Rosary Roman Catholic Church at Mahanoy Plane.   The theory of the Commonwealth was that the rectory was burned in retaliation for a series of attacks made by the rector against the maintenance of certain bawdy houses in the vicinity, notably one known as the Tilly Billy.   He had publicly announced that a meeting would be held in front of the Tilly Billy on the evening of Tuesday, June 15, 1926, to protest against its further maintenance; and the rectory was set on fire at about two o'clock in the morning of that day.   Anthony Spallone and Anthony Scatton had been tried under a separate indictment and convicted of complicity in the crime. On the present trial Spallone was called as a witness by the Commonwealth and testified that the appellant, Fotti, and his clerk, Romalo, who was a fugitive from justice, had sprinkled gasoline on the rectory porch and applied the match.   This was diametrically opposed to his evidence on his own trial.   Scatton did not corroborate him, and testified to an admission by Spallone that the story was manufactured.

To rebut Spallone the defendant called a man named Kituski who had been a witness for the Commonwealth in the other trial and had named Spallone's brother, Mike, instead of Fotti, as the fourth man in the party. On this trial he, too, swore differently and named Fotti instead of Mike Spallone as the incendiary.   The defendant's counsel were plainly surprised and the court allowed them to cross-examine him as to whether he had not testified differently before the justice of the peace and at the other trial.   He admitted he had. He was then asked whether he had not sworn differ-

ently before the grand jury—but on objection by the Commonwealth that he could not be called upon to disclose what was said there, the objection was sustained. The question should have been allowed. "On no sound principle can it be said that a witness who has testified before a grand jury shall be permitted to claim that his evidence was a privileged communication": Gordon v. Com., 92 Pa. 216, 220. The rule relied upon by the Commonwealth forbids disclosure by the grand jurors of how they or any member of the jury voted, or of the opinion of any of them expressed in relation thereto, or of any act which might invalidate the finding of the jury: Com. v. Gerstman, 64 Pa. Superior Ct. 484, 489; Com. v. Green, 126 Pa. 531, 536; Gordon v. Com., supra. It does not apply to a witness before them who is being asked concerning his contradictory statements. We would probably not reverse on this ground alone, for the witness admitted his contradictory statements on two occasions, and the defendant may not have been seriously harmed by the exclusion of the third; but if Kituski testifies for the Commonwealth on the new trial the defendant is entitled to show as many statements of Kituski, contradictory of his evidence, as he can, and to the benefit of their cumulative effect.

The fifth, sixth and seventh assignments relate to cross-examination of the defendant. It is claimed that they were violative of the Act of March 15, 1911, P. L. 20, in that they tended to show that he had been charged with offenses other than that for which he was then on trial, and was of bad character. It was entirely proper on this trial to show that the defendant kept a bawdy house, and was interested in the Tilly Billy, as bearing on the motive for the crime, but the fact that he kept a bawdy house six years before, at another place, or was illegally selling alcohol, or had committed other criminal acts, not throwing light on the motive for the crime, or resulting as the natural

development of facts testified to by the defendant (Com. v. Cicere, 282 Pa. 492) could have no other purpose or effect than as an attack on his character. The matter has been treated by us at length in Com. v. Pezzner, 78 Pa. Superior Ct. 286, and need not be further discussed. The Act of 1911 may be, as Prof. Wigmore says, (Vol. 4, 2nd Ed., Sec. 2276, note p. 917) "a vicious piece of legislation," but it is on our statute books and must be observed by courts and attorneys until it is repealed.

The tenth assignment relates to the cross-examination of Mary Dillon, an alibi witness for the defendant. We are satisfied that the examination went much further than was proper, and in effect accused the witness of the commission of offenses, and interrogated her as to her arrest for crimes, of which it was not shown she had been convicted. We went into this matter somewhat fully in Com. v. Arcurio, 92 Pa. Superior Ct. 404, (No. 5, April T., 1928), and need not do so again. The witness may be interrogated as to her conviction of crime affecting her credibility. There are other proper methods of impeaching her testimony. But cross-examination may not be used as a cover for a general and indiscriminate attack by innuendo and insinuation upon her character. The appellant's main defense was an alibi, and the witness was an important and material one. The improper attack on her character may have been very harmful to appellant.

The judgment is reversed and a venire facias de novo awarded.